T.C. Memo. 2000-192

UNITED STATES TAX COURT

FRISCIA CONSTRUCTION, INCORPORATED, ET AL.,[1] Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 19874-98, 19973-98,    Filed June 28, 2000.
19975-98.

    Michael J. Friscia (an officer), for petitioner in
docket No. 19874-98.

    Michael J. Friscia and Michelle R. Friscia, pro se in
docket No. 19973-98.

    Michael J. Friscia, pro se in docket No. 19975-98.

    <u>Patricia Pierce Davis</u> and <u>Claire R. McKenzie</u>, for
respondent.

MEMORANDUM OPINION

---

[1] Cases of the following petitioners are consolidated
herewith: Michael J. and Michelle R. Friscia, docket No. 19973-
98, and Michael J. Friscia, docket No. 19975-98.

LARO, Judge:  These cases were consolidated for purposes of trial, briefing, and opinion.  Respondent determined deficiencies in, additions to, and penalties on petitioners' Federal income tax as follows:

Michael J. and Michelle R. Friscia, docket No. 19973-98:

|  |  | Accuracy-Related Penalty |
| Year | Deficiency | Sec. 6662(a) |
| 1994 | $41,904 | $8,380.80 |

Michael J. Friscia, docket No. 19975-98:

|  |  | Addition to Tax and Penalty | |
| Year | Deficiency | Sec. 6651(a) | Sec. 6662(a) |
| 1995 | $21,350 | $2,146.10 | $4,270 |

Friscia Construction, Inc., docket No. 19874-98:

| Fiscal Year |  | Addition to Tax and Penalty | |
| Ended | Deficiency | Sec. 6651(a) | Sec. 6662(a) |
| 6/30/95 | $84,814 | $21,203.50 | $16,963.80 |

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. Hereinafter, all dollar amounts are rounded to the nearest dollar.

After concessions, the issues for decision are:

(1)  Whether Michael and Michelle Friscia (the Friscias) had unreported income of $82,586 for 1994.  We hold that they had unreported income of $28,215.

(2) Whether Michael J. Friscia (Michael Friscia) had unreported income of $35,915 for 1995. We hold that he had unreported income of $4,196.

(3) Whether the Friscias and Michael Friscia are liable for self-employment tax on the unreported income for 1994 and 1995, respectively. We hold that they are.

(4) Whether the Friscias and Michael Friscia are liable for the accuracy-related penalty under section 6662(a) for the 1994 and 1995 taxable years. We hold that they are.

(5) Whether Michael Friscia is liable for the addition to tax for failure to file timely under section 6651(a)(1). We hold that he is.

(6) Whether deductions and costs of goods sold claimed by Friscia Construction, Inc. (Friscia Construction), in excess of $108,160 have been substantiated and are allowable. We hold that for the taxable year ended June 30, 1995, Friscia Construction had gross receipts of $260,921 and allowable deductions and costs of goods sold in the total amount of $229,796.

(7) Whether Friscia Construction is liable for the accuracy-related penalty under section 6662(a). We hold that it is.

(8) Whether Friscia Construction is liable for the addition to tax for failure to file timely under section 6651(a)(1). We hold that it is.

To facilitate disposition of these issues, we shall first make general findings of fact and then combine our findings and opinion with respect to each issue.

General Findings of Fact

Some of the facts and certain documents have been stipulated pursuant to Rule 91. The parties' stipulations are incorporated herein by reference and are found accordingly.

At the time of the filing of the petitions herein, Michael and Michelle Friscia resided in Lockport, Illinois, and the principal place of business of Friscia Construction was also Lockport, Illinois.

During 1994 and 1995, Michael Friscia was an officer and employee of Friscia Construction, a company founded by his father. Michael Friscia began working full time for Friscia Construction after graduating from high school in 1979. Michael Friscia and his brother became the officers of Friscia Construction upon their father's death in 1992.

Friscia Construction is in the business of commercial construction and home remodeling. Michael Friscia worked for the company as a carpenter and handled all of the company's banking, bill paying, and paperwork, including preparation of estimates and proposals and filing tax returns. In addition, Michael Friscia performed construction services for his own clients through his S corporation, Mik Mic, Inc. (Mik Mic).

During 1994, Michelle Friscia was employed as a registered nurse. Through mid-1994, Michelle Friscia also operated a business selling household products through an Amway distributorship.

In 1996, the Friscias' neighborhood suffered a flood. The Friscias assert that as a result of the flood most of the records substantiating income and expenses for the years at issue were destroyed, including Friscia Construction's invoices and accounts receivable and the records from the Amway business. Petitioners did not reconstruct these records but did produce certain substantiating documents such as bank statements, canceled checks, check registers, and deposit slips.

Issue 1. The Friscias' 1994 Taxable Income

The Friscias filed a joint 1994 Federal income tax return. Upon audit, the Friscias were unable to produce detailed records of their income. As a result, respondent employed the bank deposits method of proof. Respondent determined that the Friscias had gross deposits of $164,961 in 1994. After concessions, respondent asserts that $82,586 of this amount is unreported income.

Gross income is "all income from whatever source derived". Sec. 61(a). This text is construed broadly to include all "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." Commissioner v. Glenshaw

Glass Co., 348 U.S. 426, 431 (1955); Hawkins v. United States, 30 F.3d 1077, 1079 (9th Cir. 1994).

Taxpayers are required to maintain adequate records of income. See sec. 6001. In the absence of adequate books and records, the Commissioner may reconstruct a taxpayer's income by any reasonable method that clearly reflects income. See sec. 446(b); Commissioner v. Hansen, 360 U.S. 446, 467 (1959); Harper v. Commissioner, 54 T.C. 1121, 1129 (1970). The bank deposits method is an accepted method of income reconstruction when a taxpayer has inadequate books and records and large bank deposits. See DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Parks v. Commissioner, 94 T.C. 654, 658 (1990).

Bank deposits are prima facie evidence of income. See Clayton v. Commissioner, 102 T.C. 632, 645 (1994). The taxpayer has the burden of proving that the bank deposits came from a nontaxable source. See Rule 142(a); Clayton v. Commissioner, supra at 645; Estate of Mason v. Commissioner, 64 T.C. 651, 657 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Sproul v. Commissioner, T.C. Memo. 1995-207. The bank deposits method assumes that all money deposited into a taxpayer's bank account during a given period constitutes taxable income, but the Government must take into account any nontaxable source or deductible expense of which

it has knowledge.  See <u>Clayton v. Commissioner</u>, <u>supra</u> at 645; <u>DiLeo v. Commissioner</u>, <u>supra</u> at 868.

Respondent's bank deposit analysis encompassed an examination of seven different joint bank accounts owned by the Friscias.  We review respondent's determination as follows.

1.  <u>The 591 Account</u>

The Friscias deposited $14,043 into a bank account numbered 108034591 (the 591 account) in 1994 and earned interest thereupon of $132.  The Friscias concede that these deposits are income.  Accordingly, $14,175 of the deposits and interest in the 591 account represents income taxable to the Friscias in 1994.

2.  <u>The 649 Account</u>

The Friscias deposited $46,172 into a bank account numbered 206090649 (the 649 account) in 1994.  The Friscias concede that this figure represents gross receipts from Michelle Friscia's Amway distributorship.  However, the Friscias contend that this figure should be offset by various claimed deductions all of which respondent has denied.  Respondent asserts that the Friscias' testimony and canceled checks fail to substantiate that any expenses were incurred in operating the Amway business.  We disagree.

The Amway distributorship system is well known to respondent and this Court.  See, e.g., <u>Elliott v. Commissioner</u>, 90 T.C. 960 (1988), affd. without published opinion 899 F.2d 18 (9th Cir.

1990); <u>Nissley v. Commissioner</u>, T.C. Memo. 2000-178; <u>Theisen v. Commissioner</u>, T.C. Memo. 1997-539; <u>Rubin v. Commissioner</u>, T.C. Memo. 1989-290; <u>Alcala v. Commissioner</u>, T.C. Memo. 1984-664. In most of these cases, we found that the expenses of operating the distributorship at issue were so great in comparison to the revenue generated that the distributor lacked a true profit motive. Here, by contrast, respondent asserts that Michelle Friscia's Amway distributorship was exceptionally profitable in that it generated $46,172 in proceeds with no expenses. We find this implausible, especially in light of the Friscias' decision to discontinue the distributorship in 1994.

The Friscias used the 649 account as a business account for the Amway distributorship, and the transactions therein reflect the items of income and expense for the Amway business. Michelle Friscia admitted that after discontinuing the business in mid-1994, she began to pay personal expenses out of the account. However, she was able to identify legitimate business expenditures through her testimony and the bank records. The Friscias made payments totaling $36,996 to upline distributors and to Amway in 1994. We find that these payments represented $36,496 in deductible sales commissions and costs of goods sold.[2]

---

[2]On the basis of Michelle Friscia's testimony, we find that $500 of the Amway products purchased in 1994 were for the Friscias' personal household use.

Accordingly, we hold that the Friscias' net income in 1994 from the Amway distributorship was $9,676 ($46,172 - $36,496).

### 3. The 533 Account

The Friscias deposited $33,645 into a bank account numbered 206084533 (the 533 account) in 1994. The Friscias concede that these deposits were wages received by Michael Friscia from Friscia Construction in 1994.

### 4. The 864 Account

The Friscias deposited $1,450 into a bank acccount numbered 100446864 (the 864 account) in 1994 and earned interest thereupon of $17. Respondent concedes that the Friscias made $1,300 in nontaxable transfers into this account. The Friscias presented no evidence concerning the source of the remaining $150 in deposits. Accordingly, $167 of the deposits and interest in the 864 account represents income taxable to the Friscias in 1994.

### 5. The 898 Account

The Friscias deposited $1,135 into a bank account numbered 100446898 (the 898 account) in 1994. The Friscias have provided no explanation for the source of these deposits. Accordingly, the full $1,135 in deposits represents income taxable to the Friscias in 1994.

### 6. The 522 Account

The Friscias deposited $53,516 into a bank account numbered 206084522 (the 522 account) in 1994. Respondent concedes that

the Friscias made $24,449 in nontaxable transfers into this account.[3]

The record reflects that the Friscias made additional nontaxable deposits into the 522 account of $4,889, which were Amway sales proceeds received by the Friscias in 1993. These proceeds are properly allocable to the Friscias' 1993 return. See Lavery v. Commissioner, 158 F.2d 859 (7th Cir. 1946) (payments made by check to a cash basis taxpayer are includable in income in the year the check is received, not the year it is deposited), affg. 5 T.C. 1283 (1945).

The Friscias also claim that $4,002 of the payments received from Friscia Construction in 1994 and deposited into the 522 account were reimbursements for expenditures paid by the Friscias on behalf of the company. These include a $1,500 reimbursement for a Christmas party and a $2,502 reimbursement for a computer. The Friscias have failed to establish that these expenses were incurred on the company's behalf. Thus, these amounts are includable in the Friscias' income for 1994.

Accordingly, $24,178 of the deposits in the 522 account represents income taxable to the Friscias in 1994.

---

[3]Petitioners claim an additional nontaxable transfer in the amount of $1,325 from "account 6930". This contention is unsupported as there is no document in the record reflecting an account 6930.

7.   The 004 Account

The Friscias deposited $15,000 in a bank account numbered
252981004 (the 004 account) in 1994.  Respondent concedes that
these were proceeds from a nontaxable loan.

8.   Summary of 1994 Income

In sum, the deposits into the Friscias' seven bank accounts
in 1994 reflect the following amounts of income taxable to the
Friscias in 1994:

| Account | Income |
|---------|--------|
| 591 | $14,175 |
| 649 | 9,676 |
| 533 | 33,645 |
| 864 | 167 |
| 898 | 1,135 |
| 522 | 24,178 |
| 004 | – 0 – |
| Total | 82,976 |

The Friscias reported gross receipts of $54,760 in 1994, as
follows:

| | |
|---|---|
| Wages less withholding[1] | $8,630 |
| Interest | 201 |
| Schedule C receipts | 4,825 |
| Other income | 3,700 |
| Schedule D sale | 405 |
| Rental income | 22,000 |
| Mik Mic proceeds[2] | 15,000 |
| Total | 54,761 |

[1]The amount withheld is netted from wages because these
amounts would not have been deposited into the Friscias' accounts.

[2]Respondent concedes that the Friscias reported $15,000
in proceeds from Michael Friscia's construction business on the
Mik Mic income tax returns in 1994.

Accordingly, we hold that the Friscias underreported their income for 1994 by $28,215 ($82,976 - $54,761).[4]

Issue 2.  Michael Friscia's 1995 Taxable Income

Michael Friscia filed his 1995 tax return on December 9, 1996, claiming married filing separate status.  Again using the bank deposits method of proof, respondent determined that Michael Friscia made bank deposits in 1995 of $78,529, all of which respondent determined is reportable as income.  After concessions, respondent asserts that $35,915 of this amount is unreported income.

Respondent's determination was based on an analysis of five bank accounts, which we review as follows.

1.   The 591, 864, and 898 Accounts

In 1995, Michael Friscia made total deposits of $3,515, $1,350, and $705, respectively, into the 591, 864, and 898 acounts.  Michael Friscia provided no nontaxable source for any of these deposits.  However, these accounts were all joint accounts in the names of Michael Friscia and Michelle Friscia.  Therefore,

_____

[4]This holding conflicts with respondent's request for admission No. 6, which was deemed admitted by reason of the Friscias' failure to serve and file a response to respondent's Requests for Admission within 30 days.  See Rule 90.  That admission stated:  "The total of petitioners' unreported income for the taxable year 1994 was at least $123,335.00."  Respondent made no mention of admission No. 6 at trial or in his posttrial brief and has made numerous concessions that conflict with the admission.  Under these circumstances, we conclude that respondent has voluntarily withdrawn request for admission No. 6.

only one-half of the unexplained deposits constitutes an item of gross income to Michael Friscia. See Van Eck v. Commissioner, T.C. Memo. 1995-570. Accordingly, $2,785 of the deposits into these accounts represents income to Michael Friscia in 1995.

2. The 533 Account

Michael Friscia deposited $20,760 into the 533 account in 1995. Michael Friscia concedes that this entire amount represents wages he earned from Friscia Construction in 1995 and is reportable by him as income.

3. The 522 Account

Michael Friscia deposited $52,199 into the 522 account in 1995. Respondent concedes that Michael Friscia made $17,949 in nontaxable transfers into this account. Michael Friscia has established that the following additional deposits into the 522 account are not taxable to him: (i) $12,692 in wages earned by Michelle Friscia, and (ii) $3,000 in nontaxable proceeds from the sale of a truck inherited from his father. Michael Friscia concedes that he deposited $18,345 in proceeds from his Mik Mic business and wages from Friscia Corporation into the account. One-half of the remaining $213 (or $107) in unexplained deposits is taxable to Michael Friscia because of his joint interest in the account. See id. Accordingly, $18,452 of the deposits into the 522 account represents income to Michael Friscia for 1995.

4. <u>Summary of 1995 Income</u>

In sum, we find that Michael Friscia had the following amounts of income in 1995:

| Account | Income |
|---------|--------|
| 591/864/898 | $2,785 |
| 533 | 20,760 |
| 522 | 18,452 |
| Total | 41,997 |

We further find that Michael Friscia reported gross receipts of $37,801 in 1995, as follows:

| | |
|---------|--------|
| Interest | $221 |
| Rental income | 22,000 |
| Mik Mic proceeds[1] | 15,580 |
| Total | 37,801 |

[1]Unlike for 1994, respondent contests the amount Michael Friscia testified he reported on the Mik Mic returns in 1995. Respondent provides no explanation for this inconsistency. We find Michael Friscia's testimony as to the amounts reported on the Mik Mic returns to be equally credible as to both 1994 and 1995.

Accordingly, we hold that Michael Friscia underreported his income for 1995 by $4,196 ($41,997 - $37,801).

<u>Issue 3. Self-Employment Tax for 1994 and 1995</u>

In the notice of deficiency, respondent determined that the Friscias and Michael Friscia are liable for self-employment taxes for the amounts underreported in 1994 and 1995, respectively. The Friscias fail to offer any evidence or analysis of this issue and so fail to meet their burden of proof. Accordingly, we hold that the amounts underreported represent income from self-employment

subject to self-employment tax under section 1401 and that the Friscias may deduct one-half of the self-employment tax paid under section 164(f).

Issue 4. Negligence Accuracy-Related Penalty for 1994 and 1995

Section 6662(a) imposes a penalty in an amount equal to 20 percent of the underpayment of tax attributable to one or more of the items set forth in section 6662(b). Section 6662(b)(1) applies an accuracy-related penalty to the portion of an underpayment attributable to negligence or disregard of rules or regulations. The Friscias bear the burden of proving that respondent's determination is erroneous. See Rule 142(a); Axelrod v. Commissioner, 56 T.C. 248, 258-259 (1971). Negligence includes any failure to make a reasonable attempt to comply with the Internal Revenue Code. See sec. 6662(c). Such negligence may be excused if it is found that the taxpayer acted with reasonable cause and in good faith with respect to the underpayments. See id.

Reliance on professional advice alone is not an absolute defense to negligence but rather a factor to be considered. See Froehlich v. Commissioner, T.C. Memo. 1996-487. In order for reliance on professional advice to excuse a taxpayer from the negligence penalty, the taxpayer must show that the professional had the expertise and the knowledge of the pertinent facts to provide competent advice on the subject matter. See Goldman v.

Commissioner, 39 F.3d 402, 408 (2d Cir. 1994), affg. T.C. Memo. 1993-480; Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991); Kozlowski v. Commissioner, T.C. Memo. 1993-430, affd. without published opinion 70 F.3d 1279 (9th Cir. 1995).

The Friscias underreported their income for 1994 by $28,215, and Michael Friscia underreported his income for 1995 by $4,196. Though their returns were prepared by an accountant, the Friscias did not present any evidence to show that the underreporting was due to any act of their accountant or reliance upon his advice.

The Friscias contend that the accuracy-related penalty should not apply because their records were destroyed in a 1996 flood. We have found as a fact that the Friscias underreported their income. The Friscias have admitted that at least a portion of the underreported amount stems from their own negligence, such as deducting personal expenses as Amway business expenses. The Friscias' failure of proof as to the remaining amounts of underreported income provides no basis for a finding of reasonable cause.

Accordingly, we find that the Friscias and Michael Friscia are liable for the accuracy-related penalty for 1994 and 1995, respectively.

Issue 5.  Michael Friscia's Section 6651 Addition to Tax

Respondent determined an addition to tax under section 6651(a)(1) for Michael Friscia's 1995 taxable year, asserting that Michael Friscia failed to file a timely return.  In order to avoid this addition to tax, Michael Friscia must prove that the failure was due to reasonable cause and not willful neglect.  See sec. 6651(a)(1); Rule 142(a); United States v. Boyle, 469 U.S. 241, 245 (1985); Harris v. Commissioner, T.C. Memo. 1998-332.

Michael Friscia received an extension of time to file his 1995 tax return, which extended the due date for filing his 1995 tax return to October 15, 1996.  He did not file his 1995 tax return until December 9, 1996.  There is no evidence in the record with respect to why Michael Friscia's 1995 tax return was filed late or whether reasonable cause existed.

Michael Friscia argues on brief that the loss of his business records in the 1996 flood caused the delay in filing his 1995 return.  Implicit in Michael Friscia's argument is that he needed the extra time to reconstruct the lost records.  However, the Friscias made no attempt to reconstruct any of the lost records at that time.  Thus, the same records that were available to Michael Friscia on October 15, 1996, when his return was due, were available to him on December 9, 1996, when he filed his return. Moreover, we have held that the loss of records in an involuntary

action does not relieve taxpayers of their duty to file a timely return.  See Chamberlin v. Commissioner, T.C. Memo. 2000-50.

Accordingly, we hold that Michael Friscia is liable for the section 6651 addition to tax with respect to the net amount of tax due on his 1995 tax return.

Issue 6.  Friscia Construction's Allowable Deductions

Respondent's notice of deficiency denied all of Friscia Contruction's costs of goods sold and deductions for the taxable year ended June 30, 1995 (the 1995 taxable year).  On brief, respondent concedes that Friscia Construction is entitled to costs of goods sold and deductions of $108,160.

Friscia Construction claimed costs of goods sold on its 1995 taxable year corporate tax return of $222,264 along with the following deductions:

| | |
|---|---:|
| Accounting | $650 |
| Truck expense | 5,393 |
| Misc. | 111 |
| Dues | 486 |
| Equipment rental | 55 |
| Union dues | 1,204 |
| Insurance | 4,713 |
| Office | 345 |
| Postage | 64 |
| Telephone | 5,682 |
| Utilities | 1,105 |
| Supply | 1,501 |
| Bank charges | 132 |
| Promo | 430 |
| License | 96 |
| Total deductions | 21,967 |

On the basis of Michael Friscia's testimony, the canceled checks, and banking records we are convinced that Friscia Construction was conducting a legitimate construction business and necessarily had a variety of expenses in connection with such operations, which would be allowable as deductions herein. Friscia Construction was thus entitled to some amount of deductions under section 162(a) in connection with the business. See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Michael Friscia provided specific testimony at trial about the company's construction projects for the year, and we find a majority of the claimed expenses to be consistent with these activities.

Upon our detailed review of the record we find that Friscia Construction is entitled to costs of goods sold and deductions for the 1995 taxable year as follows:

| | |
|---|---|
| Costs of goods sold | $135,645 |
| Wages[1] | 68,756 |
| Licenses | 220 |
| Advertising | 150 |
| Accounting | 650 |
| Truck maintenance/gas | 4,375 |
| Supplies | 198 |
| Dues | 1,759 |
| Insurance | 4,743 |
| Office expense | 736 |
| Telephone | 5,683 |
| Legal fees | 2,500 |
| Bank charges | 132 |
| Vehicle depreciation | 4,249 |
| Total | 229,796 |

[1]The deduction for wages reflects a concession by respondent, to which petitioner agrees.

Friscia Construction reported gross receipts for the 1995 taxable year of $262,211, which respondent has not challenged. However, this figure included Amway sales of $1,290, which we previously allocated to Michelle Friscia's Amway distributorship for the Friscias' 1994 taxable year. Accordingly, we find Friscia Construction's gross receipts for the 1995 taxable year to be $260,921.

Taking the above into account, Friscia Construction had a net profit of $31,125 ($260,921 - $229,796) for the 1995 taxable year, representing a profit margin of 11.9 percent. Respondent conceded on brief that Friscia Construction's profit margin was between 8 and 12 percent. Our determination is in the high range of respondent's concession, but the record does not support a lower margin.

Friscia Construction reported a loss for the 1995 taxable year of $611. Accordingly, we hold that Friscia Construction underreported its income by $31,736.

## Issue 7. Friscia Construction's Negligence Accuracy-Related Penalty

Respondent determined a negligence accuracy-related penalty under section 6662(a) for Friscia Construction's 1995 taxable year. The record does not show that the company was not negligent or the existence of reasonable cause. Though Fricia Construction's return was prepared by an accountant, there was no testimony at trial that the company relied upon its accountant's

advice with respect to claiming any of the disallowed costs of goods sold or deductions.  Accordingly, we sustain respondent's determination on the applicability of this penalty.

Issue 8.  Friscia Construction's Section 6651 Addition to Tax

Friscia Construction filed a Form 1120, U.S. Corporation Income Tax Return, for the 1995 taxable year (the 1995 return), on November 8, 1996.  As extended, the due date for Friscia Construction's 1995 return was March 15, 1996.

Respondent determined an addition to tax under section 6651(a), asserting that Friscia Construction failed to file a timely 1995 return and that it did not show that its failure was due to reasonable cause.  Michael Friscia testified that he did not know why the 1995 return was filed late.  There is no evidence in the record that Friscia Construction had reasonable cause for filing the 1995 return late.  Accordingly, we hold that Friscia Construction is liable for an addition to tax under section 6651(a).

We have considered all arguments by both parties for holdings contrary to those which we reach herein, and, to the extent not discussed above, have found those arguments to be irrelevant or without merit.

To reflect the foregoing and concessions,

Decisions will be entered

under Rule 155.